# United States Court of Appeals
## For the First Circuit

No. 09-2311

FRANCISCA ROMÁN-CANCEL ET AL.,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Selya and Lipez, Circuit Judges.

Nicolás Nogueras Cartagena, Julio C. Alejandro Serrano, and Office of Nicolás Nogueras Cartagena on brief for appellants.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Appellate Chief, and Luke Cass, Assistant United States Attorney, on brief for appellee.

July 22, 2010

**SELYA**, **Circuit Judge**. This appeal follows on the heels of the dismissal of a Federal Tort Claims Act (FTCA) suit as time-barred. We reach the same conclusion as the district court, although we premise our decision on alternative holdings (one of which extends beyond the lower court's rationale).

The facts are straightforward. Upon returning from military service in Vietnam, plaintiff-appellant Nelson Cortés-Castillo[1] experienced delusions and depression. This symptomatology led to a diagnosis of schizophrenia. In August of 1970, the Department of Veterans Affairs (VA) assigned Cortés-Castillo a 100% disability rating. This rating dictated the amount of disability benefits due to him. See 38 C.F.R. § 3.321(a).

On July 16, 1975, the VA's regional office, responding to a psychiatric reevaluation, lowered the plaintiff's disability rating to 70%. The lowered rating resulted in a corresponding decrease in disability benefits.

The VA notified the plaintiff of the reduction on July 24, 1975, effective October 1, 1975. The plaintiff sought administrative review before the Board of Veterans Affairs (the Board). In a decision dated November 2, 1976, the Board upheld the

---

[1] There are actually three plaintiffs: Cortés-Castillo; his wife, Francisca Román-Cancel; and their conjugal partnership. For ease in exposition, we refer to Cortés-Castillo as if he were the sole plaintiff. Because the other plaintiffs' claims are derivative, the resolution of Cortés-Castillo's claim is determinative of all the issues on appeal.

lowered disability rating (and, thus, cemented in place the corresponding decrease in benefits).

The plaintiff subsequently sought to restore his 100% disability rating. On November 21, 1985, the Board denied his petition. On April 30, 1986, the plaintiff served a notice of disagreement in which he alleged that the VA had committed a clear and unmistakable error in reducing his disability rating.

For all practical purposes, the matter lay fallow until May of 2001, when the plaintiff again charged, in a renewed filing with the Board, that the lowered disability rating was the product of clear and unmistakable error. This time, the Board upheld the plaintiff's claim; on October 14, 2004, it returned his disability rating to 100%. It also awarded him retroactive benefits totaling $33,905.11, dating back to 1975. The plaintiff received this award in a lump sum, paid on March 4, 2005.

This victory did not placate the plaintiff. Invoking the FTCA, he filed an administrative claim with the VA on August 16, 2005, alleging negligent reduction of his disability benefits. By law, the VA had six months within which to respond. 28 U.S.C. § 2675(a). On December 22, 2005, the VA denied the claim.[2] It

---

[2] On October 7, 2005, the plaintiff filed a premature civil action in the district court. The court dismissed this action without prejudice for failure to exhaust administrative remedies. Neither the commencement nor the termination of this action is material to the issues on appeal.

explained that the plaintiff's exclusive remedy was the award of retroactive benefits (already received).

The VA's response laid out the plaintiff's options for further review. It informed him that he could either file for administrative reconsideration or sue under the FTCA. The letter spelled out the temporal limitations that applied to each of these options. The plaintiff did nothing within the time allotted (six months).

On August 8, 2006, the plaintiff filed a second administrative claim with the VA, once again alleging negligent reduction of his benefits. This second claim went unanswered.

On April 2 or 3, 2007 — the record is tenebrous, but the exact date makes no difference — the plaintiff sued the government in the United States District Court for the District of Puerto Rico. See 28 U.S.C. § 1346. The plaintiff's complaint sounded the same theme adumbrated in the two administrative claims, premising the government's liability on an allegedly negligent reduction of benefits. The government moved to dismiss, arguing that the court lacked subject matter jurisdiction because the suit had not been filed within two years next following the accrual of the cause of action. See id. § 2401(b); Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003). The plaintiff opposed the motion.

The district court concluded that the plaintiff's cause of action had accrued in November of 1985 (when the Board denied

the petition to restore the higher disability rating). Román-Cancel v. United States, No. 07-1275, slip op. at 10 (D.P.R. July 31, 2009) (unpublished). This timely appeal followed.

We review the granting of a motion to dismiss for lack of subject matter jurisdiction de novo. See Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009); González v. United States, 284 F.3d 281, 287 (1st Cir. 2002). We are not wedded to the lower court's rationale, but may affirm the order of dismissal on any ground made manifest by the record. InterGen, N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

Generally speaking, the United States enjoys immunity from suit. See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006); see also Cohens v. Virginia, 19 U.S. 264, 413 (1821). In the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, Congress waived the government's sovereign immunity with respect to private tort actions. That waiver, however, is hedged by a number of restrictions and conditions. See, e.g., 28 U.S.C. § 2680(a)-(n); see also Fothergill, 566 F.3d at 252. Congress further limited the waiver by incorporating into the FTCA a series of fixed time limits. See Rakes v. United States, 442 F.3d 7, 18 (1st Cir. 2006). The limitations period prescribed in the FTCA constitutes a condition of the immunity waiver, and its expiration extinguishes any potential governmental liability. United States v. Kubrick, 444 U.S. 111, 117-18 (1979).

The time limits for FTCA actions have more than one dimension. A tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). These temporal parameters are strictly construed in favor of the sovereign. Patterson v. United States, 451 F.3d 268, 270 (1st Cir. 2006).

The case at hand deals with both of the FTCA's temporal limitations. We begin with the six-month filing deadline following the denial of an administrative claim. The district court based its analysis on the two-year claim-filing deadline following the accrual of the claim. It did not discuss the six-month filing deadline, assuming that the second administrative claim, filed on August 8, 2006, was the operative filing. The court's analysis therefore proceeded on the assumption that the six-month window for the commencement of suit opened on February 8, 2007 (the effective denial date of the second administrative claim). See 28 U.S.C. § 2675(a) (stating that the "failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim"). Therefore, the district court regarded the suit initiated in early April of 2007 as timely filed.

On appeal, the government argues that the plaintiff's first administrative claim was the operative filing for the purpose of measuring the six-month window. Since the VA denied that claim on December 22, 2005, the government posits, the window closed on June 22, 2006. Thus, the plaintiff's suit, commenced in early April of 2007, overshot the deadline.

The plaintiff's riposte is twofold. First, he says that this argument is waived because the government did not advance it below. Second, he maintains that the later administrative claim comprises the correct point of reference.

The waiver argument is easily dismissed. Compliance with the FTCA's temporal deadlines is both mandatory and jurisdictional. González, 284 F.3d at 288; González-Bernal v. United States, 907 F.2d 246, 248 (1st Cir. 1990). It is a familiar rule that challenges to a federal court's subject matter jurisdiction can be raised at any stage of the litigation. See, e.g., ConnectU LLC v. Zuckerberg, 522 F.3d 82, 86 n.2 (1st Cir. 2008); Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138-39 (1st Cir. 2004). That rule controls here: this particular jurisdictional question, although raised by the government for the first time on appeal, is properly before us.

The dilemma created by the duplicative administrative claims is more apparent than real. The papers in the case describe only a single injury: the (allegedly negligent) reduction of the

plaintiff's disability benefits. Even without the claim forms (which are not part of the record on appeal),[3] the only inference that can be drawn is that both claims relate to that injury. See 32 C.F.R. § 750.26(c) ("A claim is a notice . . . of an incident giving rise to Government liability . . . ."). From a legal standpoint, then, the second claim is the functional equivalent of the first.

Where, as here, a party has filed duplicative administrative claims, an inquiring court can regard the second claim in one of two ways: as either an attempt to re-file the original claim or an attempt to have the agency reconsider its disposition of the original claim. Either way, the second claim in this case is a nullity. We explain briefly.

If we view the second claim as an attempt to re-file, it would not reconfigure the FTCA time line. Nothing to change the substance of the claims occurred in the interval between the first and second filings. Under these circumstances, the second administrative claim served no legitimate purpose.

That conclusion divests the second claim of any legal effect. After all, it would be pointless for a court to allow a claimant an opportunity to reopen the FTCA's limitations window by

---

[3] The plaintiff, as the party prosecuting the appeal, has the responsibility to ensure that the record on appeal is complete. See Fed. R. App. P. 11(a); Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987).

the simple expedient of re-filing a claim to supplant an earlier, functionally equivalent claim on which the window had shut. In the bargain, honoring a re-filed claim would frustrate the goal of the FTCA's filing deadlines. See Steven W. Feldman, Federal Administrative Practice § 445, at 167 (4th ed. 2002) (explaining that decisions of the Board "are final").

The point is obvious, so the case law is sparse. Nevertheless, what few cases there are plausibly suggest that such repetitive filings should not be given effect. See, e.g., Matos v. Sec'y of HEW, 581 F.2d 282, 286 (1st Cir. 1978) (holding denial of administrative claim res judicata as to subsequent claim for the same benefits on the same grounds). That makes perfect sense: one bite at the apple is all that the FTCA's claim-filing scheme allows.[4] Cf. Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 39 (1st Cir. 2000) (reinforcing strict construction of FTCA requirements).

Of course, there is another way in which one might view the second administrative claim: as a request to reconsider the denial of the original claim. But even if assayed in that manner, the second claim here would nonetheless be impuissant.

The FTCA sets out a six-month period following the denial of an administrative claim in which an FTCA action premised on that

---

[4] This holding applies to claims that are essentially duplicative of one another. We take no view of the propriety of a successive claim that is, in some meaningful sense, new.

claim may be brought. 28 U.S.C. § 2401(b). Prior to the expiration of that period, a claimant, as an alternative, also has six months to file a request with the agency for reconsideration of the previously denied claim. 28 C.F.R. § 14.9(b). A timely request for reconsideration will toll the six-month period for filing suit for an additional six months (or such shorter period in which the agency actually responds to the request). See Berti v. VA Hosp., 860 F.2d 338, 340 (9th Cir. 1988).

The time parameters for such requests for reconsideration are strictly enforced. See id. This means that an untimely request does not reopen an expired six-month window for the filing of suit. Id.

The VA denied the first administrative claim by letter dated December 22, 2005. The letter informed the appellant of his option to file a request for reconsideration within six months of that date and provided helpful information for doing so. The letter also made it clear that "[t]o be timely filed, this request [for reconsideration] must be received by VA prior to the expiration of 6 months from the date of the mailing of this final denial."

The plaintiff's second administrative claim was not filed until August 8, 2006 — beyond the six-month period allotted for reconsideration requests. That was too late. See Davis v. United States, 589 F.3d 861, 865 (6th Cir. 2009) (finding administrative claim exhausted if there is no timely request for reconsideration).

-10-

The short of it is that, no matter how the second administrative claim is characterized, it had no practical effect. Consequently, the first administrative claim is the relevant claim for the purpose of determining the timeliness of the instant action.

There is no need to tarry. The first administrative claim was denied on December 22, 2005. The plaintiff had six months from that date within which to sue.[5] See 28 U.S.C. § 2401(b). The plaintiff commenced his suit on April 2 or 3, 2007. This was one year, three months, and ten or eleven days after the denial of the relevant administrative claim. Accordingly, this suit is untimely. See Vélez-Díaz v. United States, 507 F.3d 717, 720 (1st Cir. 2007).

The plaintiff's suit is untimely on a second ground as well. As the district court recognized, the plaintiff did not file either administrative claim with the VA within two years after his cause of action accrued. This is a fatal flaw. See 28 U.S.C. § 2401(b).

For FTCA purposes, a claim accrues upon the occurrence of the underlying injury. Callahan v. United States, 426 F.3d 444, 450-51 (1st Cir. 2005). This moment is pinpointed at the time the injured party knows of the existence and the cause of his injury. Id. at 451. Something less than full knowledge suffices to start the running of the FTCA limitations period. Skwira, 344 F.3d at 78.

_____

[5] The plaintiff does not argue that this six-month period was somehow tolled. Any such argument is, therefore, waived. See United States v. Zannino, 895 F.2d 1, 9 n.7 (1st Cir. 1990).

Accrual is triggered by the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to seek advice to decide if there is a basis for filing a claim. Callahan, 426 F.3d at 451; Skwira, 344 F.3d at 78.

The plaintiff contends that he had no knowledge of the existence or cause of his injury until October of 2004, when the Board agreed that the reduction of his disability rating was the result of clear and unmistakable error. Like the district court, we find this argument unconvincing. At bottom, it is an effort to redefine what constitutes accrual. See, e.g., Callahan, 426 F.3d at 450-51.

The plaintiff knew all the pertinent facts about his injury when he was first notified of the impending decrease in his disability rating on July 24, 1975. His repeated efforts to have his rating increased highlight this knowledge. He also knew definitively of the causal connection between the VA's action and his injury by November 21, 1985. It was on that date that the Board denied his petition to restore his disability rating. Thus, the plaintiff's claim, for FTCA purposes, accrued by November of 1985. He had two years from that time in which to initiate the FTCA claim-filing process. He missed this deadline.

In his reply brief, the plaintiff makes a related assertion that it was the VA's acknowledgment of error and inept handling over time, rather than the original incorrect decision to

reduce his disability rating, that triggered the running of the two-year limitations period. Whether or not that would be a viable claim had the plaintiff made it — a matter on which we take no view — his complaint belies that depiction of the claim. It alleges at the outset that the harm was the erroneous reduction of his disability rating, simpliciter. It is too late in the day for the plaintiff to switch his theory of the case. See B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39-40 (1st Cir. 2004); see also Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir.1990).

We need go no further. For the reasons elucidated above, we affirm the order of dismissal.

**Affirmed**.

-13-